UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
COOKEVILLE DIVISION

THERESA MARTHA
CAROL JOHNSON,

        Plaintiff,        Civil Action No. 2:16-cv-00026
                                   Honorable William L. Campbell, Jr.
                                   Magistrate Judge David R. Grand

v.

SOCIAL SECURITY
ADMINISTRATION,

        Defendant.
_____/

### REPORT AND RECOMMENDATION TO GRANT
### PLAINTIFF'S MOTION FOR JUDGMENT ON THE RECORD [16]

Plaintiff Theresa Martha Carol Johnson ("Johnson") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). On October 5, 2016, Johnson filed a Motion for Judgment on the Administrative Record and a Memorandum in Support. (Docs. #16, #17). On November 29, 2016, the Commissioner filed a response in opposition to Johnson's motion. (Doc. #20). On January 30, 2018, this matter was referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**I.     RECOMMENDATION**

For the reasons set forth below, the Court finds that the Administrative Law Judge's ("ALJ") conclusion that Johnson is not disabled under the Act is not supported by substantial evidence. Accordingly, the Court RECOMMENDS that Johnson's Motion for Judgment on the Administrative Record (Doc. #16) be GRANTED, and that, pursuant to sentence four of 42

U.S.C. § 405(g), this case be REMANDED to the ALJ for further proceedings consistent with this Report and Recommendation.

## II. REPORT

### A. Procedural History

On September 26, 2011, Johnson filed applications for DIB and SSI, alleging a disability onset date of November 27, 2010. (Tr. 45, 85-86). These applications were denied at the initial level. (Tr. 85-86). Johnson filed a timely request for an administrative hearing, which was held on July 1, 2014, before ALJ Mark Siegel. (Tr. 61-84). Johnson, who was represented by attorney Brenda Benson, testified at the hearing, as did vocational expert ("VE") Jo Ann Bullard. (*Id.*). At the hearing, Johnson amended her alleged onset date to May 8, 2011. (Tr. 74). On October 23, 2014, the ALJ issued a written decision finding that Johnson is not disabled under the Act. (Tr. 42-54). On March 4, 2016, the Appeals Council denied review. (Tr. 1-6). Johnson timely filed for judicial review of the final decision on May 5, 2016. (Doc. #1).

### B. Framework for Disability Determinations

Under the Act, DIB and SSI benefits are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or

mental ability to do basic work activities," benefits are denied without further analysis.

Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.

Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, No. 11-10593, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. §§ 404.1520, 416.920); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps . . . . If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### C. Background

#### 1. *The Record*

Johnson alleges disability as a result of emphysema, a "bad" right shoulder, and arthritis. (Tr. 254). At the time of the administrative hearing, Johnson was fifty-three years old. (Tr. 66). Her highest level of education is tenth grade, and she worked as a certified nursing assistant from 1996 to 2010. (Tr. 255, 262-67, 271).

The Court has thoroughly reviewed the record in this matter, including Johnson's medical record, Function Report, Disability Reports, and testimony as to her conditions and resulting limitations. Instead of summarizing that information here, the Court will make references and

provide citations to the record as necessary in its discussion of the parties' arguments.

### 2. Vocational Expert's Testimony

Jo Ann Bullard testified as an independent VE at the administrative hearing. (Tr. 79-82, 193-94). The VE characterized Johnson's past work as a nurse assistant as medium and semi-skilled. (Tr. 79). The ALJ asked the VE to imagine a hypothetical individual of Johnson's age, education, and work experience who is limited to light exertion; cannot climb ladders, ropes, or scaffolds; can occasionally perform other postural activities or reach above the right shoulder; and should avoid even concentrated exposure to temperature extremes, humidity, vibration, pulmonary irritants, and work hazards. (*Id.*). The VE testified that the hypothetical individual could perform light unskilled jobs that exist in the regional and national economies, such as: office helper (2,000 jobs in Tennessee; 115,000 jobs nationally); marker, retail (5,100 jobs in Tennessee; 216,700 jobs nationally); and sorter (3,400 jobs in Tennessee; 129,700 jobs nationally). (Tr. 79-80).

The ALJ then asked the VE to imagine a hypothetical individual who, "irrespective of any other limitations that they might have," is limited to standing and walking a total of two hours in an eight-hour workday and sitting a total of four hours in an eight-hour workday. (Tr. 80). In addition, the individual needs three to four unscheduled breaks of fifteen to thirty minutes each during an eight-hour workday, and the individual will miss more than four days of scheduled work in a month. (*Id.*). The VE testified that there would be no jobs at any exertional level that such an individual would be able to perform in the economy on a competitive basis. (*Id.*). The VE also testified that the individual would not be able to maintain employment if she had to miss three or more days per month or if she could concentrate for less than two hours in an eight-hour workday. (Tr. 81-82).

### D. The ALJ's Findings

Following the five-step sequential analysis, the ALJ found that Johnson is not disabled under the Act. At Step One, the ALJ found that Johnson has not engaged in substantial gainful activity since May 8, 2011, the amended alleged onset date. (Tr. 47). Next, the ALJ found that Johnson has the severe impairments of chronic obstructive pulmonary disease ("COPD"), asthma, emphysema, bronchitis, pneumonia, right shoulder degenerative joint disease, and cervical degenerative disc disease. (*Id.*). At Step Three, the ALJ found that Johnson's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (Tr. 49).

The ALJ then found that Johnson retains the residual functional capacity ("RFC") to perform light work, except that she cannot climb ladders ropes, or scaffolds; she can occasionally perform other postural activities or reach above her right shoulder; and she should avoid concentrated exposure to temperature extremes, humidity, vibrations, pulmonary irritants, and work hazards. (*Id.*).

At Step Four, the ALJ concluded that Johnson is unable to perform any past relevant work. (Tr. 52). At Step Five, the ALJ found that considering Johnson's age, education, work experience, and RFC, she can perform the following jobs that exist in significant numbers in the national economy: office helper; marker, retail; and sorter. (Tr. 53). As a result, the ALJ concluded that Johnson is not disabled under the Act. (Tr. 53-54).

### E. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the

Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by

a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("[I]f substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'").

**F.    Analysis**

In her summary judgment motion, Johnson argues that the ALJ committed "harmful legal error" by failing to provide "legally sufficient good reasons" for giving little weight to the opinion of her treating physician, Elizabeth Petty, M.D.[1]  (Doc. #17 at 9).  For the reasons set forth below, the Court finds that this argument has merit and that remand is appropriate.

*1.    The ALJ did not Comply with the Treating Physician Rule*

Johnson argues that the ALJ's rationale for giving little weight to Dr. Petty's opinion "does not provide the 'good reasons' necessary for rejecting the opinion of a treating physician under applicable legal standards." (*Id.*).  As a result, Johnson argues that the ALJ's finding is harmful error of law and is not supported by substantial evidence. (*Id.*).  The Court agrees.

"Generally, the opinions of treating physicians are given substantial, if not controlling, deference," but they "are only given such deference when supported by objective medical

---

[1] Johnson also argues that the ALJ erred in his credibility assessment. (Doc. #17 at 14-19). In particular, Johnson argues that the ALJ's reasons for finding her allegations "not entirely credible" (Tr. 50) are not supported by substantial evidence. (Doc. #17 at 14-19). Because the Court is recommending remand as to the ALJ's evaluation of Dr. Petty's opinion, the Court need not address this argument. On remand, however, the ALJ should consider the record in full and the impact that all of Johnson's impairments have on her ability to function in the workplace on an ongoing, full-time basis.

7

evidence." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (citing *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984) and 20 C.F.R. § 404.1527(d)(2)). Thus, an ALJ "'must' give a treating source opinion controlling weight if the treating source opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'" *Blakley*, 581 F.3d at 406 (internal quotations omitted); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7 (July 2, 1996). However, it is "error to give [a treating source] opinion controlling weight simply because it is the opinion of a treating source" unless it is well-supported and consistent with the record as a whole. SSR 96-2p, 1996 WL 374188, at *2 (July 2, 1996).

If the ALJ declines to give a treating physician's opinion controlling weight, he must document how much weight he gives it, considering a number of factors, including the "length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2) (establishing that the ALJ must "give good reasons" for the weight given to a treating source opinion)). That a treating physician's opinion is inconsistent with the record constitutes a "good reason" for not giving controlling weight to it. *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 417-18 (6th Cir. 2011). "Although the regulations instruct an ALJ to consider these factors, they expressly require only that the ALJ's decision include 'good reasons . . . for the weight . . . give[n] [to the] treating source's opinion' – not an exhaustive factor-by-factor analysis." *Francis v. Comm'r Soc. Sec. Admin.*, 414 F. App'x 802, 804 (6th Cir. 2011) (quoting 20 C.F.R. § 404.1527(d)(2)).

Ultimately, "[t]his procedural 'good reason' rule serves both to ensure adequacy of

review and to permit the claimant to understand the disposition of his case." *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550-51 (6th Cir. 2010) (citing *Rogers*, 486 F.3d at 242). "Significantly, the requirement safeguards a reviewing court's time, as it 'permits meaningful' and efficient 'review of the ALJ's application of the [treating physician] rule.'" *Cole v. Astrue*, 661 F.3d 931, 938 (6th Cir. 2011) (quoting *Wilson*, 378 F.3d at 544). Because it also "exists to 'ensur[e] that each denied claimant receives fair process,'" the Sixth Circuit has "held that an ALJ's 'failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight' given '*denotes a lack of substantial evidence*, even where the conclusion of the ALJ may be justified based upon the record.'" *Blakley*, 581 F.3d at 407 (emphasis in original) (quoting *Rogers*, 486 F.3d 243).

On April 30, 2012, Dr. Petty filled out a RFC Questionnaire regarding Johnson's impairments. (Tr. 477-78). She identified herself as Johnson's primary care physician, who sees Johnson at least once every three months with "sometimes more office/out[patient] visits." (Tr. 477). She indicated that Johnson's diagnoses include emphysema, pulmonary fibrosis, chronic rotator cuff disease tendinitis, and AC joint arthritis, and that her prognosis was "fair." (*Id.*). She listed all of Johnson's symptoms as being dyspnea with exertion, syncope with overexertion, frequent pulmonary symptoms, and uncontrolled coughing. (*Id.*). She opined that these symptoms are "[o]ften" severe enough to interfere with the attention and concentration required to perform simple work-related tasks. (*Id.*). She wrote that Johnson experiences the following side effects from medications that may impact her capacity for work: anxiety from breathing medicines and sedation from pain medicine. (*Id.*). Dr. Petty answered "[y]es" to whether Johnson would "need to recline or lie down during a hypothetical 8-hour workday in excess of

9

the typical 15-minute break in the morning, the 30-60 minute lunch, and the typical 15-minute break in the afternoon." (*Id.*).

Regarding Johnson's functional limitations, Dr. Petty opined that Johnson can walk one city block without rest or significant pain. (*Id.*). She circled numbers indicating that Johnson can stand or walk for fifteen minutes at one time[2] and that in an eight-hour workday, she can sit for a total of four hours and stand or walk for a total of two hours. (*Id.*). Dr. Petty marked a box indicating that Johnson needs a job that permits shifting positions at will from sitting, standing, or walking. (*Id.*). She also indicated that Johnson would need to take three to four unscheduled breaks during an eight-hour workday, with each break lasting fifteen to thirty minutes. (*Id.*). Dr. Petty wrote checkmarks indicating that Johnson could never lift ten, twenty, or fifty pounds, but could occasionally lift less than ten pounds. (Tr. 478). Dr. Petty marked a box next to the word "Yes" regarding whether Johnson has limitations in doing repetitive reaching, handling, or fingering. (*Id.*). Specifically, she indicated that Johnson can reach with both arms for only twenty-five percent of an eight-hour workday but has no limitations using her hands and fingers. (*Id.*). Based upon her experience with Johnson and considering the objective medical, clinical, and laboratory findings, Dr. Petty estimated that Johnson is likely to be absent from work more than four times a month as a result of her impairments or treatments. (*Id.*). Finally, Dr. Petty checked boxes indicating that Johnson is not a malingerer, that Johnson's impairments are reasonably consistent with the symptoms and functional limitations described in this evaluation, and that Johnson is not "physically capable of working an 8 hour day, 5 days a week employment on a sustained basis." (*Id.*).

The ALJ discussed Dr. Petty's opinion in a mere five lines in the decision:

---

[2] A section of the form asked Dr. Petty to circle the number of minutes that Johnson can sit at one time. (Tr. 477). Dr. Petty left this section blank. (*Id.*).

> As for the opinion evidence, I have considered the opinion of treating physician Dr. Petty (Exhibit 6F). Dr. Petty's opinion seems highly influenced by [Johnson's] allegations on the day of the assessment, (Exhibit 7F, page 6), rather than the totality of [Johnson's] medical treatment record. I give this opinion little weight as I find Dr. Petty's restrictions too limiting and not well-supported.[3]

(Tr. 52).

Johnson argues that "the ALJ's assertion that Dr. Petty's opinion was 'too limiting and not well-supported' is a legal conclusion" that cannot be upheld "without a showing that substantial evidence supported those conclusions." (Doc. #17 at 11). Johnson takes issue with "the vagueness of the ALJ's explanation" and the fact that "nowhere in his discussion of Dr. Petty's opinion or his limited narrative of the evidence does the ALJ show what evidence is supporting his assertions." (*Id.*). Johnson points out that it is the ALJ's responsibility "to make clear what evidence supported his conclusion that Dr. Petty's opinion was not supported" and contends that his "failure to logically and coherently connect the evidence to his conclusion" creates "a substantial gap in his analysis that prevents effective review of this finding." (*Id.*). In addition, Johnson argues that the ALJ also made "no showing of evidence that would support [his] speculative assertion[]" that Dr. Petty "seem[ed] highly influenced by [Johnson's] allegations on the day of the assessment." (*Id.* at 12). As to this conclusion, Johnson argues that the ALJ "[y]et again . . . failed to explain why Dr. Petty's reliance on the treatment note from the date she rendered her opinion is a basis for rejecting her opinion." (*Id.*). Johnson also points out that "the ALJ never states that Dr. Petty's opinion was inconsistent with the treatment note from

---

[3] The ALJ only mentions Dr. Petty one other time in the decision. In the paragraph immediately preceding the one cited above, the ALJ wrote that "in October 2012, [Johnson's] treating physician Dr. Elizabeth Petty wanted to refer [Johnson] to Dr. Dimeo in Oak Ridge, but she stated that she did not need a referral because he would not tell her anything else." (Tr. 52). The ALJ mentioned this in support of his conclusion that Johnson has "made statements that indicated that getting disability was a goal driving her to seek treatment." (*Id.*).

11

the same date, which also undermines his other assertions that Dr. Petty's opinion was not supported." (*Id.*).

Pursuant to SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996), because 20 C.F.R. §§ 404.1527(c) and 416.927(c)[4] impose the "good reasons" requirement, "a decision denying benefits 'must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Wilson*, 378 F.3d at 544 (quoting SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996)). "It is an elemental principle of administrative law that agencies are bound to follow their own regulations."[5] *Id.* at 545. "Consistent with this principle, courts have remanded the Commissioner's decisions when they have failed to articulate 'good reasons' for not crediting the opinion of a treating source, as [§§ 404.1527(c) and 416.927(c)] require[]." *Id.* (internal citations omitted).

Here, the ALJ violated §§ 404.1527(c) and 416.927(c) by failing to provide good reasons for giving Dr. Petty's opinion little weight. The ALJ referenced Dr. Petty's RFC Questionnaire without discussing any of the restrictions Dr. Petty opined were appropriate for Johnson. Other than that, he only cited a single page out of the entire 645-page transcript – again, without discussing its contents. Based on this one page, which makes up part of a medical record by Dr.

---

[4] SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996) references 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2); however, it appears that in the version of the statute that was in effect when the ALJ issued his decision on October 24, 2014, the applicable provisions were 20 C.F.R. §§ 404.1527(c) and 416.927(c) (effective August 24, 2012 to March 26, 2017).

[5] "Although Social Security Rulings do not have the same force and effect as statutes or regulations, '[t]hey are binding on all components of the Social Security Administration' and 'represent precedent final opinions and orders and statements of policy' upon which we rely in adjudicating cases." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 n.1 (6th Cir. 2009) (quoting 20 C.F.R. § 402.35(b)).

12

Petty, the ALJ found that Dr. Petty's opinion seemed "highly influenced by [Johnson's] allegations on the day of the assessment," and he therefore concluded that Dr. Petty's restrictions were "too limiting and not well-supported." (Tr. 52). But the ALJ does not explain how he arrived at this conclusion and what evidence supports it. Thus, the ALJ failed to comply with §§ 404.1527(c) and 416.927(c) because he did not clarify whether Dr. Petty's opinion was "'well supported by medical acceptable clinical and laboratory diagnostic techniques' or was 'inconsistent with the other substantial evidence in [the] case record,' . . . did not identify the evidence supporting such a finding, and did not explain its application of the factors listed in [§§ 404.1527(c) and 416.927(c)] to determine the weight given to [Dr. Petty's] opinion." *Wilson*, 378 F.3d at 546. "Namely, [the ALJ] did not balance § 1527(c)(2)'s requisite factors, such as the length of the treatment relationship and frequency of examination, the nature and extent of the treatment relationship, and specialization of the treating source." *Allen v. Berryhill*, 273 F. Supp. 3d 763, 772 (M.D. Tenn. 2017). This merits remanding the case.[6] *See Wilson*, 378 F.3d at 546.

The ALJ also failed to provide good reasons for giving Dr. Petty's opinion little weight because he did not identify the substantial evidence that supports this decision. *See Gayheart v.*

---

[6] Remand is also warranted because the ALJ failed to consider all of the relevant evidence in the case record, as §§ 404.1527(c) and 416.927(c) and the regulations require him to do. 20 C.F.R. §§ 404.1527(c) and 416.927(c) ("In determining whether you are disabled, we will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive." (citing 20 §§ C.F.R. 404.1520b, 416.920b)); SSR 06-03p, 2006 WL 2329939, at *4 (Aug. 9, 2006) ("As set forth in regulations at 20 CFR 404.1527(b) and 416.927(b), we consider all relevant evidence in the case record when we make a determination or decision about whether the individual is disabled."). The transcript contains approximately twenty records by Dr. Petty from when she saw Johnson between August 28, 2007 and April 9, 2014. But the ALJ makes no indication that these records were considered. (*See* Tr. 52 (stating that he considered the opinion of Dr. Petty that appears in "Exhibit 6F" and Johnson's allegations that appear in "Exhibit 7F, page 6")); *see also Roberts v. Colvin*, No. 13-14675, 2015 WL 181658, at *10 (E.D. Mich. Jan. 14, 2015) (noting that while ALJ need not discuss all record evidence, "the quality and volume of evidence not discussed by the ALJ may 'raise[ ] serious doubts about the supportability of the ALJ's RFC finding' and overall conclusions." (quoting *Wilcox v. Comm'r of Soc. Sec.*, No. 13-12549, 2014 WL 4109921, at *7 (E.D. Mich. Aug. 19, 2014))).

*Comm'r of Soc. Sec.*, 710 F.3d 365, 377 (6th Cir. 2013) (determining that the ALJ failed to provide good reasons, in part, because the ALJ "does not identify the substantial evidence that is purportedly inconsistent" with the treating physician's opinion). Yet even if substantial evidence did support the ALJ's consideration of Dr. Petty's opinion, "substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 1527[(c)] as harmless error." *Blakley*, 581 F.3d at 410 (citing *Wilson*, 378 F.3d at 546). "The general administrative law rule . . . is for a reviewing court, in addition to whatever substantive factual or legal review is appropriate, to 'set aside agency action . . . found to be . . . without observance of procedure required by law.'" *Id.* (internal citation omitted).

Furthermore, the ALJ's conclusion that Dr. Petty's restrictions were "too limiting and not well-supported" is ambiguous and vague. The ALJ does not identify what portions of Dr. Petty's opinion are "too limiting," and he does not explain why the restrictions are purportedly problematic. He likewise does not explain why Dr. Petty's opinion is not "well-supported" and does not identify specific portions of the record that are at odds with it. The ALJ gives no indication as to whether it is not well-supported by Dr. Petty's own treatment records, records from other providers, objective examinations, Johnson's own testimony – to name a few – or whether it is not well supported by something else. *See id.* (ALJ failed to provide good reasons, in part, because the ALJ's conclusion that the treating physician's opinions "are not well-supported by any objective findings" is ambiguous). "[T]he Sixth Circuit . . . recently took issue with an ALJ merely stating that the treating physician's opinion 'conflicted with other evidence,' noting the allegedly conflicting evidence must be specified" and that it "must consist of more than the medical opinions of the nontreating and nonexamining doctors. Otherwise the treating-physician rule would have no practical force because the treating source's opinion would have

controlling weight only when other sources agreed with that opinion." *Reagan v. Colvin¸* F. Supp. 3d 648, 662 (E.D. Tenn. 2014) (quoting *Gayheart*, 710 F.3d at 377).

In her response brief, the Commissioner argues that the ALJ properly evaluated Dr. Petty's opinion. (Doc. #20 at 7-8). The Commissioner disagrees that the ALJ's finding is "vague" because, in her view, "the argument ignores the prior discussion of the objective evidence and medical opinions." (*Id.* at 8). The Commissioner is presumably referring to the "prior discussion" that appears in the ALJ's decision – as opposed to her brief – yet she does not explain how the ALJ's earlier discussion of the medical evidence, which fails to specifically address Dr. Petty's findings, clarifies the ALJ's conclusion or makes it not vague.

The Commissioner also argues that the ALJ's analysis of Dr. Petty's opinion was proper because Dr. Petty's examination of Johnson had "normal" results in March 2012 and May 2012, before and after she issued her opinion in April 2012 RFC Questionnaire. (*Id.*). According to the Commissioner, "[w]hile the April 2012 findings might support some of [Dr. Petty's] opinion, the remainder of the record did not." (*Id.*). The Commissioner believes that further support for the ALJ's analysis exists because "[c]onsistent with the ALJ's finding, the state agency medical consultants reviewed Dr. Petty's opinion and found it inconsistent with the medical records." (*Id.*). Furthermore, "Dr. Petty completed a checkmark-box form without citation to any objective evidence." (*Id.*). However, "the Court notes that it 'may not accept appellate counsel's post hoc rationalizations for agency action. It is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself.'" *Allen*, 273 F. Supp. 3d at 773 (quoting *Berryhill v. Shalala*, 4 F.3d 993, 1993 WL 361792, at *6 (6th Cir. Sept. 16, 1993)). "Courts are not at liberty to speculate on the basis of an administrative agency's order . . . . The court is not free to accept 'appellate counsel's post hoc rationalization for agency action in lieu

of reasons and findings enunciated by the [Commissioner].'" *Id.* (quoting *Hyatt Corp. v. N.L.R.B.*, 939 F.2d 361, 367 (6th Cir. 1991)). Accordingly, "the Commissioner's post hoc rationalizations are not an acceptable substitute for the ALJ's lack of rationale" concerning the ALJ's evaluation of Dr. Petty's opinion. *See id.* Thus, these arguments and explanations put forth by the Commissioner do not alter the Court's finding that the ALJ failed to comply with the treating physician rule and the good reasons rule.

"The ALJ's failure to follow agency rules and regulations 'denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole*, 661 F.3d at 939-40 (quoting *Blakley*, 581 F.3d at 407). However, a violation of the good reasons rule can be considered "harmless error" under the following circumstances:

> (1) a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it; (2) if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion; or (3) where the Commissioner has met the goal of § 1527[(c)] . . . even though she has not complied with the terms of the regulation.

*Id.* at 940 (quoting *Friend*, 375 F. App'x at 551). Ultimately, "the ALJ's failure to follow the Agency's procedural rule does not qualify as harmless error where [the court] cannot engage in 'meaningful review' of the ALJ's decision." *Blakley*, 581 F.3d at 409 (citing *Wilson*, 378 F.3d at 547).

In this case, the ALJ's violation of the "good reasons" rule is not harmless error. The deficiencies in the ALJ's decision explained above – not providing specific reasons for giving little weight to Dr. Petty's opinion, not citing to evidence that supports his finding, and providing a conclusion that is vague and ambiguous – prevent the Court from being able to meaningfully review the decision. *See Rife v. Comm'r of Soc. Sec.*, 485 F. App'x 56, 58 (6th Cir. 2012) (holding that where the ALJ merely stated that the treating physician's opinion was not

supported by objective evidence, "we are unable to conduct a meaningful review of the ALJ's application of the treating-physician rule" because there is no indication of the reasons for disregarding the treating physician's restrictions (citing *Wilson*, 378 F.3d at 544)).

Moreover, the ALJ's error is not harmless because none of the three factors listed above are met. As for the first factor, Dr. Petty's opinion is not "so patently deficient that the Commissioner could not possibly credit it" because there is support for it in the record. In the RFC Questionnaire, Dr. Petty noted Johnson's respiratory conditions, such as emphysema and pulmonary fibrosis, and symptoms that included dyspnea, syncope, "frequent pulmonary symptoms," and "uncontrolled coughing." (Tr. 477). In addition to Dr. Petty, consultative examiner Terrence Leveck, M.D. (Tr. 584), Ndubuisi Okafor, M.D. (Tr. 14), and Johnson's pulmonologist David Henson, M.D., found that Johnson had emphysema. (Tr. 7, 10, 13, 472-73). Dr. Henson also noted that Johnson had "increased cough." (Tr. 472-73). Results from objective examinations such as CT scans confirm Johnson's emphysema diagnosis. (Tr. 346, 569).

Support for Dr. Petty's RFC Questionnaire can also be found in Dr. Petty's own treatment notes. On January 27, 2010, Dr. Petty noted that a review of systems resulted in Johnson complaining of shortness of breath, having a cough, and producing yellow sputum. (Tr. 441). On March 21, 2012, Johnson was positive for chronic cough, cough, dyspnea, and wheezing. (Tr. 489). On May 21, 2012, she was positive for cough. (Tr. 480). On October 17, 2012, Dr. Petty noted that Johnson "behaves somewhat like a bronchitic" and that her sputum was "persistently abnormal." (Tr. 565). She therefore referred Johnson to a new pulmonologist. (*Id.*). On November 12, 2012, Johnson's review of systems indicates that she was positive for cough, dyspnea, and producing "less purulent" sputum. (Tr. 581). On January 24, 2013, she

again was positive for cough, dyspnea, and clear-to-yellow sputum. (Tr. 634). At that appointment, Dr. Petty wrote that Johnson continued to have cough and "moderate" amounts of sputum (Tr. 632), and she prescribed Johnson nocturnal oxygen. (Tr. 635). On October 8, 2013, Johnson was positive for dyspnea. (Tr. 626). Johnson described her breathing as "fair" and said that she still coughs (worse at night) and produces sputum. (Tr. 625). Dr. Petty instructed Johnson to continue using her inhalers for her COPD (Tr. 628), which Dr. Petty identified as a "chronic problem" on numerous occasions. (Tr. 480, 484, 489, 618, 625, 632). Consistent with her opinion in the RFC Questionnaire, on May 21, 2012 and November 12, 2012, Dr. Petty found that Johnson could walk a city block on ground level without too much shortness of air. (Tr. 480, 581). Thus, the first factor does not result in a finding of harmless error. *See Blakley*, 581 F.3d at 409-10 (holding that there is no harmless error because the record contains "objective findings that are, at the very least, not inconsistent with [the claimant's] treating physician's opinions" and thus the court cannot perform "meaningful review" of the ALJ's decision).

The second and third factors do not lead to a conclusion of harmless error either. As to the second factor, the ALJ did not adopt Dr. Petty's opinion or make findings consistent with it. Regarding the third factor, the ALJ "has [not] met the goal of § 1527[(c)]" "because the ALJ's decision leaves the Court [and Johnson] without a clear understanding" of how he analyzed Dr. Petty's opinion. *See Cole*, 661 F.3d at 940.

The Sixth Circuit "has made clear that '[w]e do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion."

*Id.* at 939 (quoting *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009)); *Gayheart*, 710 F.3d at 377. In this case, the ALJ has not provided good reasons for giving Dr. Petty's opinion little weight and such a procedural error is not harmless, regardless of whether a different outcome on remand is likely. *Wilson*, 378 F.3d at 546 ("[A] procedural error is not made harmless simply because [the aggrieved party] appears to have had little chance of success on the merits anyway." (internal quotation omitted)); *see Cole*, 661 F.3d at 940 (holding that the ALJ's decision is not supported by substantial evidence based on the ALJ's violation of procedural rules and the case must therefore be remanded – even if the ALJ reaches the same conclusion while complying with the treating physician rule and the good reasons requirement – because the protections promised to the claimant in the regulations must be afforded to him).

For all of the above reasons, and upon an independent review of the entire record, the Court concludes that the ALJ's decision is not supported by substantial evidence.

### III. CONCLUSION

For the foregoing reasons, the Court RECOMMENDS that Johnson's Motion for Judgment on the Administrative Record (Doc. #16) be GRANTED, and that, pursuant to sentence four of 42 U.S.C. § 405(g), this case be REMANDED to the ALJ for further proceedings consistent with this Report and Recommendation.

Dated: March 27, 2018                   s/David R. Grand  
Ann Arbor, Michigan               DAVID R. GRAND  
                                                  United States Magistrate Judge  
                                                  Sitting by Special Designation

### **NOTICE TO THE PARTIES REGARDING OBJECTIONS**

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and

recommendations and the order set forth above. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.